64081. NORAIR ENGINEERING CORPORATION et al. v. PORTER TRUCKING COMPANY, INC. et al.

McMURRAY, Presiding Judge.

Norair Engineering Corporation was the general contractor for the Georgia Ports Authority in constructing certain marine facilities at its Savannah Multi-Product Bulk Terminal. This voluminous contract was entered by and between the parties on September 17, 1969. Porter Trucking Company, Inc. was one of its subcontractors. The subcontract between Norair and Porter was executed on October 7, 1969, in which the subcontractor agreed to perform certain work according to specifications with reference to the site clearing, excavation, back filling, finishing and installation of storm drains, sewers and certain water systems, to provide fire protection and portable water in the new construction area, among other things. The contract work was to be performed in strict conformity with the agreement with reference to the drawings and specifications prepared by certain engineers and time was of the essence with payments to be made in accordance to same. A limited amount of storage space was provided the contractor in accordance with the bidding details, the contractor to employ such methods and means of carrying out the work without interfering with others within the prescribed time periods and area. The engineers provided the contractor with a site plan wherein all construction was to be performed. With reference to the subcontract a clause therein reads

as follows: "The Subcontractor is required to maintain the site of [its] work in a clean and safe condition and daily to remove trash, scrap and other undesirable or unsafe material resulting from [its] operation, from the area of [its] work and from the construction site . . . [and] be responsible for cleaning the construction site and adjacent streets and roads used for access to the area of [its] work as often as may be required to maintain a clean, neat and safe condition. If the Subcontractor fails to comply with these provisions, the general contractor may without notice perform the cleaning and/or repairing operations or have this work performed by others and charge the account of the Subcontractor."

Prior to the execution of the contract between the owner and the general contractor on September 17, 1969, certain changes in the specifications were submitted and incorporated on or about August 26, 1969, which read as follows: "Construct all structural fills [except the access causeway to the slewing loader turntable] with the best of available materials obtainable from excavation and from dredge materials and selected as having suitable compaction characteristics." The access causeway could be constructed entirely of dredge materials in accordance with other specifications. Other selected dredge material having satisfactory compaction characteristics could be used for future uses by the owner but no other dredge materials were to be disposed of on the owner's property, the contractor to "make [its] own arrangements for off-site disposal," but certain disposal areas might be made available with permission from the United States Army Corps of Engineers. The dredge material selected for use in fills, backfills and future use by the owner to be "stockpiled on the site to minimize rehandling."

During the work Norair, through the project engineer, obtained permission from the owner to use a 15 acre site area for the stockpiling of the dredge material. The engineers also prepared a site plan of this 15 acre tract.

With reference to the subcontract and the main contract the owner (the Georgia Ports Authority) required that prior to final payment "all surplus material, false work, temporary structures, including foundations thereof, plant of any description and debris of every nature" resulting from the operations be removed leaving the site in a neat, orderly condition.

A contract dispute developed between the general contractor and subcontractor as to the requirements of cleaning and clearing the 15 acre site in question at the completion of the job. Porter contends it was under no contractual obligation to clear this additional 15 acre tract but only to clear the construction site. It bases this argument upon the contention that it entered into a new and separate contract

for the clearing of the 15 acre tract when it was obtained for storage and it was paid by Norair for clearing this tract. Norair contended, however, that Porter was required to clear the 15 acre site in question, as well as the contract area, and it caused the area to be cleared for the sum of $60,000 (charging also 10% thereof or $6,000 for supervision) in having the material removed from the owner's property. It withheld this sum in question from Porter. The issue thus became one as to the responsibilities for clearing the 15 acre tract upon completion of the job.

Whereupon, Porter filed its complaint against Norair and by amendment and order of the trial court added Norair's bonding company, The Aetna Casualty and Surety Company, Inc. (hereafter noted as Aetna), seeking to recover the withheld sums together with other sums alleged to be due.

Norair and Aetna answered, in substance, denying the claim, and by counterclaim asserted that Norair was entitled to recover from Porter all sums expended by Norair in removing unsatisfactory fill material from the 15 acre site in question ($66,000 expenses incurred) and $9,211.09 in back charges for other violations of the contract.

The trial court referred the case to an auditor, and the auditor made an initial report to which exceptions were taken.

The auditor found that $75,211.09 had been wrongfully withheld by the defendant Norair but in favor of the defendant Norair on its counterclaim in the amount of $5,416.60, finding the defendants owed the plaintiff $69,794.49. A motion to recommit the report to the auditor was made, and same was recommitted for reconsideration. Thereafter a recommittal report was issued by the auditor in which he adhered to the award made in his original report finding against Norair. Timely exceptions to the report of the auditor and the auditor's recommittal report were filed with respect to the findings of fact and conclusions of law. A second motion to recommit the report to the auditor was denied.

The exceptions to the auditor's findings of fact were submitted to a jury. The jury returned special verdicts finding against all exceptions to findings of fact except in one instance as to the finding by the auditor that Porter did not place material from rejected work on the 15-acre tract.

The trial court entered its order and judgment and rendered judgment against Norair and Aetna in favor of Porter and the trustee in bankruptcy for Porter in the sum of $69,794.49. Defendants appeal naming also the trustee in bankruptcy of the plaintiff Porter Trucking Company, Inc., who had been added as a party plaintiff, as appellees. We proceed to review based upon the record and

transcript, including the stipulation between the parties with reference to the $60,000 sum as representing "the cost of having the dredge material in question removed," and the assessed 10% or $6,000 "supervision charge" to be decided by the court, together with all exhibits which were admitted without objection. *Held:*

As stated by the parties, the auditor and the trial court, the respective positions of the parties are as follows: The plaintiff having sued for the balance due on its contract contends it had no contract responsibility to remove certain unsuitable spoil from the 15 acre tract which was added for the purpose of stockpiling dredge materials. The defendants contend, however, that the plaintiff Porter did not perform its contract under the terms thereof and is liable for back charges and charges incurred by the defendant Norair for removing the spoil from the 15 acre tract. We are no longer concerned with the back charges by reason of the award in the judgment, although there does appear to be a contradiction in the stipulation in regard thereto "regarding the $9,111.19 back charges" and the award of $5,416.60 which became a part of the judgment in that same was for the principal sum of $69,794.49 which was the exact amount of the finding of the auditor. But it does appear that the stipulation is that "the auditor's decision regarding . . . back charges . . . is acceptable to both parties and shall be the final resolution of all claims between the Plaintiff and the Defendant pertaining thereto." The auditor found in favor of the defendant Norair in the sum of $5,416.60 instead of $9,111.19.

Therefore, we proceed to look to the two contracts and the testimony with reference to whether or not it was the duty of the plaintiff to remove any spoil material from the 15 acre tract at the completion of the work. There is no doubt that if the so-called spoil material had been left on the original construction site it would have been the plaintiff Porter's responsibility to have removed same by reason of its contract with the general contractor which required "cleaning the construction site and adjacent streets and roads used for access to the area of [its] work as often as may be required to maintain a clean, neat and safe condition." It is quite apparent that all dredge material selected for use in fills, backfills and future use by the owner is not involved here as we are concerned with spoil material which was not suitable for "compaction characteristics" or could not be "used for future use by the owner." The contract itself is voluminous and involves not only the four page subcontract between the plaintiff Porter and defendant Norair containing the language: "Finish site to be left in condition acceptable to owners," but has reference to the general contract, the plans and specifications and the bid information, as well as change orders with reference thereto. The

15 acre tract is clearly not a part of the original site but was authorized by the owner for the stockpiling of the dredge material in an effort to reduce the overall cost as originally the general contractor was required to use off-site facilities for this purpose. As late as November 19, 1969, the United States Army Corps of Engineers, in compliance with the general contractor's request of October 8, 1969, authorized the dredging of materials from the Savannah River for use on the job as fill material. It is also noted here that as the owner authorized the use of the 15 acre tract the defendant Norair paid the plaintiff $4,950 for clearing the spoil area in order that it might be used. An issue of fact thus resulted as to whether or not the plaintiff was required to clear the spoil area (the 15 acre tract) in addition to the job site at the completion of the work. It is noted that no change order was ever issued by the owner extending the site to include the 15 acre tract, although the engineers did draw a site plan as to that area. It is true that there was some evidence which would have authorized a finding that the 15 acre tract became a part of the site plan, but both the auditor and the jury found against the defendants holding the 15 acre tract did not become a part of the construction site under the subcontract agreement between plaintiff Porter and defendant Norair. The site was chosen by the owner and the defendant Norair (the general contractor) for the deposit of the dredge material (apparently containing spoil as well as suitable dredge material). There appears to have been no new quasi-contract formed by and between the parties which would have changed their original agreement. Generally, an alteration or modification of a contract is a question for the jury, that is, as to whether there has been a mutual departure from the terms thereof. See Code § 20-116; *Phoenix Air Conditioning Co. v. Towne House Developers,* 124 Ga. App. 782, 784-785 (186 SE2d 429). Under the circumstances it was for the jury to determine in considering the findings of the auditor under the facts here. See *C. & S. Bank of Thomaston v. Barron,* 181 Ga. 351 (3), 354 (181 SE 859); *Mendenhall v. Nalley,* 81 Ga. App. 517 (1), 520 (59 SE2d 283); *Hope Electric v. Gemini Constr. Co.,* 146 Ga. App. 636, 637 (1) (247 SE2d 149). As all of the defendants' enumerations of error are concerned with the findings of fact against them and in approving the jury's verdict finding against them as well as the conclusions of law based thereon we find no merit in any of same since there was evidence to support the jury's verdict (the auditor's findings of fact and law) and the court's judgment based on same. See *Williams v. Murray,* 239 Ga. 276, 277 (1) (236 SE2d 624); *Weatherspoon v. K-Mart Enterprises,* 149 Ga. App. 424, 428 (5) (254 SE2d 418). Even though the evidence is conflicting on certain issues it must be construed to uphold the verdict and all conflicts resolved in favor of

the judgment. See *Williams v. Stankowitz,* 149 Ga. App. 865, 866 (256 SE2d 147); *Jones v. Childs,* 141 Ga. App. 552, 554 (3) (234 SE2d 87).

The defendants place emphasis on the finding by the jury that the plaintiff Porter had placed rejected spoil material (unsuitable dredge material) on the 15-acre tract; hence the trial court erred in holding that the plaintiff had no duties to remove such material and in approving the auditor's report as to this finding of fact as amended by the jury. We note from the contract with the owner that if this dredge material had been suitable, that is, "having satisfactory compaction characteristics" it might be used for future use by the owner, and the owner would not have demanded that same be removed. Consequently, it is assumed that material which had to be removed from the 15-acre tract was considered spoil as unsuitable dredge material. Defendants also argue that inasmuch as the plaintiff had been paid to clear this area which it used that it entered into a new agreement with respect to that spoil area and was, therefore, estopped to deny that the 15-acre site was the spoil area, and it was unjust and inequitable to permit it simply to abandon the 15 acre site with unsatisfactory material deposited thereon. Unfortunately, it cannot be determined with absolute certainty that this 15 acre tract became a part of the construction site plan as shown in the original contract. We find no reversible error here, based upon the conclusion by the trial court that it was not the responsibility of the plaintiff Porter to remove said material from the 15 acre tract as required by its contract. Finding no merit in any of the enumerations of error the court did not err in rendering judgment for the plaintiffs.

*Judgment affirmed. Banke and Birdsong, JJ., concur.*

DECIDED SEPTEMBER 13, 1982 —
REHEARING DENIED OCTOBER 8, 1982 —

*Walter C. Hartridge,* for appellants.
*James L. Drake, Jr.,* for appellees.